RODGER R. COLE (CSB NO. 178865)
rcole@fenwick.com
SONGMEE CONNOLLY (CSB NO. 228555)
sconnolly@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:      (650) 988-8500
Facsimile:      (650) 938-5200

BRIAN W. CARVER (CSB NO. 244878)
bcarver@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:      (415) 875-2300
Facsimile:      (415) 281-1350

Attorneys for Defendant
MODEL N, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| I-MANY, INC.,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>MODEL N, INC.,<br><br>　　　　　　Defendant. | Case No.  C 07-05149 CW<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) AND MOTION FOR MORE DEFINITE STATEMENT PURSUANT TO RULE 12(E); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      December 6, 2007<br>Time:      2:00 pm<br>Dept.:      2<br>Before:   The Honorable Claudia Wilken |

# TABLE OF CONTENTS

Page(s)

INTRODUCTION ...................................................................................................... 1

BACKGROUND ....................................................................................................... 2

ARGUMENT ............................................................................................................ 7

    I.     LEGAL STANDARD. ...................................................................... 7

    II.    I-MANY'S SIXTH AND SEVENTH CLAIMS FOR DILUTION MUST BE DISMISSED PURSUANT TO RULE 12(b)(6) BECAUSE I-MANY FAILS TO PLEAD A CLAIM UPON WHICH RELIEF MAY BE GRANTED. .................................................................................... 7

        A.    The Dilution Claims Must Fail Because the I-many Marks Are Not Famous. ...................................................................... 8

        B.    I-many Fails to Allege Any Facts Supporting a Claim that Model N Has Caused Any "Dilution" of I-many's Marks. .................. 10

        C.    Plaintiff's Dilution Claims Should Be Dismissed Because Model N and I-many Are Direct Competitors........................ 12

        D.    The Federal Dilution Claim Should Be Dismissed Because Plaintiff Fails to Plead Facts Demonstrating Plaintiff Is Entitled to Damages Under 15 U.S.C. § 1125(c)(5). ................. 13

    III.   PLAINTIFF'S FIFTH CAUSE OF ACTION FOR UNFAIR COMPETITION UNDER CAL. BUS. AND PROF. CODE SECTION 17200, *ET SEQ.*, MUST BE DISMISSED. ......................... 14

    IV.   BECAUSE MODEL N CANNOT REASONABLY RESPOND TO THE COMPLAINT, I-MANY SHOULD BE REQUIRED TO PLEAD A MORE DEFINITE STATEMENT PURSUANT TO RULE 12(E). ................. 16

CONCLUSION ......................................................................................................... 17

DEFENDANT MODEL N, INC.'S MOTION
TO DISMISS (C 07-05149 CW)     i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Avery Dennison Corp. v. Sumpton*,
    189 F.3d 868 (9th Cir. 1999) ................................................................................... 9

*Bell Atl. Corp. v. Twombly*,
    127 S. Ct. 1955 (2007) ...................................................................................... 7, 11

*Cel-Tech Commc'ns v. L.A. Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ...................................................................................... 15

*Century 21 Real Estate LLC v. Century Ins. Group*,
    No. CIV 03-0053, 2007 U.S. Dist. LEXIS 9720 (D. Ariz. Feb. 9, 2007) ................................ 9

*Comerica Bank v. McDonald*,
    No. C-06-03735, 2006 U.S. Dist. LEXIS 86306 (N.D. Cal. Nov. 20, 2006) ........................ 16

*Dan-Foam A/S & Tempur-Pedic, Inc. v. Brand Named Beds, LLC*,
    500 F. Supp. 2d 296 (S.D.N.Y. 2007) ...................................................................... 8

*Durning v. First Boston Corp.*,
    815 F.2d 1265 (9th Cir. 1987) ............................................................................... 7

*FreecycleSunnyvale v. Freecycle Network, Inc.*,
    No. C 06-00324, 2006 U.S. Dist. LEXIS 54374 (N.D. Cal. July 25, 2006) ........................ 15

*Hamzik v. Zale Corp./Del.*,
    No. 3:06-cv-1300, 2007 U.S. Dist. LEXIS 28981 (N.D.N.Y. Apr. 19, 2007) ..................... 10

*Ileto v. Glock Inc.*,
    349 F.3d 1191 (9th Cir. 2003) ............................................................................... 7

*Jarritos, Inc. v. Los Jarritos*,
    No. C 05-02380, 2007 U.S. Dist. LEXIS 32245 (N.D. Cal. May 2, 2007) ........................... 9

*Lazar* v. *Superior Court*,
    12 Cal. 4th 631 (1996) ...................................................................................... 16

*Mintel Learning Tech., Inc. v. Beijing Kaidi Educ. & Tech. Dev. Co.*,
    No. C 06-7541, 2007 U.S. Dist. LEXIS 59946 (N.D. Cal. Aug. 9, 2007) ..................... 15, 16

*Panavision Int'l, L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998) ........................................................................... 8, 9

*Parrino v. FHP, Inc.*,
    146 F.3d 699 (9th Cir. 1998) ............................................................................... 7

*Parrish v. NFL Players Ass'n*,
    No. C 07-00943, 2007 U.S. Dist. LEXIS 68355 (N.D. Cal. Sep. 6, 2007) ........................ 16

*Robertson v. Dean Witter Reynolds, Inc.*,
    749 F.2d 530 (9th Cir. 1984) ............................................................................... 7

*SG Servs. v. God's Girls Inc*,
    No. CV 06-989, 2007 U.S. Dist. LEXIS 61970 (C.D. Cal. May 11, 2007) ........................ 11

*TCPIP Holding Co. v. Haar Commc'ns, Inc.*,
    244 F.3d 88 (2nd Cir. 2001) ............................................................................... 13

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003)..................................................................... 7

*Van Buskirk v. CNN*,
  284 F.3d 977 (9th Cir. 2002)..................................................................... 7

*Verilux, Inc. v. Hahn*,
  No. 3:05cv254, 2007 U.S. Dist. LEXIS 58507 (D. Conn. Aug. 10, 2007)............................. 9

*Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097 (9th Cir. 2003) ................................. 16

*YKK Corp. v. Jungwoo Zipper Co.*,
  213 F. Supp. 2d 1195 (C.D. Cal. 2002) ....................................................... 12, 13

**STATUTES**

15 U.S.C. § 1114 ................................................................................ 5

15 U.S.C. § 1125 ............................................................................... 10

15 U.S.C. § 1125(a) ............................................................................. 5

15 U.S.C. § 1125(c) ............................................................. 6, 8, 9, 10, 14

15 U.S.C. § 1125(d) ............................................................................ 10

Cal. Bus. & Prof. Code § 14330 .............................................................. 6, 9

Cal. Bus. & Prof. Code § 17200 *et seq.* ............................................. 5, 15, 16

Cal. Bus. & Prof. Code § 17500 *et seq.* ..................................................... 15

Fed. R. Civ. P. 12(b) ................................................................ 1, 2, 7, 17

Fed. R. Civ. P. 12(e)......................................................... 1, 2, 6, 10, 15, 16, 17

Fed. R. Evid. 201 .............................................................................. 7

**OTHER AUTHORITIES**

4 McCarthy on Trademarks and Unfair Competition (4th ed. 2007)............................... 11, 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on December 6, 2007 at 2:00 p.m. or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Claudia Wilken, located at the United States District Court, 1301 Clay Street, Oakland, California, defendant Model N, Inc. ("defendant" or "Model N") will and hereby does move the Court for an order dismissing the complaint in this action and for an order for a more definite statement.

Defendant makes its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), on the grounds that plaintiff I-many, Inc. ("plaintiff" or "I-many") has failed to plead facts sufficient to state a claim against defendant, and pursuant to Fed. R. Civ. P. 12(e), on the grounds that the complaint is so vague or ambiguous that defendant cannot reasonably be required to frame a responsive pleading thereto.  Defendant's motion is based upon this Notice of Motion and Motion, and the accompanying Memorandum of Points and Authorities filed and served herewith; the pleadings and records on file herein; and on such additional materials and argument as may be presented to the Court at or before the hearing on the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Model N respectfully submits this Memorandum of Points and Authorities in support of its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and motion for a more definite statement pursuant to Fed. R. Civ. P. 12(e).

## <u>INTRODUCTION</u>

This lawsuit is about the pot calling the kettle black.  I-many essentially complains that Model N is using the exact same advertising method I-many itself engages in—namely, the purchase of competitors' names as keywords in Google's AdWords Program.  The only difference is that Model N took minimal effort to protect its marks by requesting Google not insert them into the text of any of its Sponsored Links, whereas I-many did not.

However, because this is a motion pursuant to Rule 12, Model N accepts I-many's pleading as true for purposes of this motion, irrespective of the underlying merits of the dispute. Even so, I-many's complaint should be dismissed because I-many fails to state a claim upon

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

which relief may be granted.  First, I-many's dilution claims (Counts Six and Seven) must be dismissed because I-many has not alleged—and cannot allege—its marks are famous to the general consuming public and I-many has not alleged an actionable claim for dilution.  Second, I-many's unfair competition claim pursuant to Cal. Bus. & Prof. Code sections 17200 *et seq.* (Count Five), must be dismissed because I-many has not established Model N's alleged conduct is unfair or fraudulent.  Finally, because I-many's complaint is too vague and ambiguous, in particular with regard to I-many's trademark infringement claims against Model N, Model N requests I-many be required to provide a more definite statement pursuant to Rule 12(e).  A more definite statement is needed with respect to the remaining claims so that Model N has sufficient notice of the nature of the claims raised against it and so that it may be able to respond to the complaint appropriately.

## BACKGROUND[1]

### I-many and Model N

Model N and I-many are direct competitors in the business of providing software and related services to manage contract and transaction compliance for life sciences companies.  Complaint at ¶ 7.  I-many purports to have over 280 customers worldwide.  *See id.* at ¶ 8.  Twenty-five percent (25%) of its clientele are Fortune 50 companies and more than seventy percent (70%) of their clientele have over $1 billion in revenue.  I-many's clients are within the top 25 pharmaceutical companies in the world and include companies such as Avanir, Honeywell, Procter & Gamble, Rona, Scripps, Simplot and Wockhardt USA.  I-many uses its trademarks in connection with "computer software to create, manage, and monitor performance of complex contract purchasing arrangements to facilitate business-to-business e-commerce" and its service marks in connection with "computer services, namely, computer consulting services for others; custom software design and implementation for others; and providing application service provider services for others featuring software in the field of contract purchasing arrangements to facilitate business-to-business e-commerce by allowing customers to identify and manage specific contract

---

[1]    Model N recognizes that the Court must accept as true the factual allegations of I-many's complaint solely for the purpose of this 12(b)(6) motion.  However, Model N provides this background to the Court to provide essential context to I-many's sparse complaint.

1    terms and conditions and incentives, rebates, and payment provision available."  Complaint at

2    ¶¶ 11-12, 14-15.

3        Model N similarly has a customer base consisting of large sophisticated companies,

4    including leading companies in high tech semiconductor and electronic components,

5    pharmaceuticals, medical technology and biotechnology.  Its customer base includes such

6    companies as Boston Scientific, Bristol-Myers Squibb, Cypress Semiconductor, Intersil Corp.,

7    Linear Technology Corp., Medtronic, Inc., Microchip Technology Inc., Micron Technology, Inc.,

8    Ortho-Clinical Diagnostics, ON Semiconductor Corp. and Pfizer Inc.  Model N owns and uses its

9    "Model N" trademark and servicemark, registered with United States Patent and Trademark

10   Office under Registration Nos. 2802726 and 2716149.  Model N uses its trademark in connection

11   with "[c]omputer software for developing and maintaining business-to-business exchanges of the

12   goods and services of others over a global or local computer network" and its servicemark in

13   connection with "[c]omputer services, namely, developing, maintaining, and hosting web sites for

14   others for the purpose of business-to-business exchanges of goods and services of others via a

15   global or local computer network."

16       The software solutions and services of Model N and its competitors (such as I-many) are

17   offered to a specific and narrow niche clientele consisting of large complex business

18   organizations such as those companies listed above—not to individual customers or smaller

19   business entities.  This is because the software and related services aim to uniformly track and

20   manage the mass complexities of revenue, pricing, fees, contracts and/or regulatory compliance

21   faced by the enormous volume of transactions handled by such large business entities.

22   Demonstrating this, Model N's offerings are priced starting in the hundreds of thousands of

23   dollars, which is comparable to pricing amongst its competitors, including I-many.  Moreover,

24   each sales cycle takes no less than approximately six to eight months.  The sales process begins

25   with a potential customer issuing a request for proposal, in response to which vendors then submit

26   proposals.  The responding vendors, such as Model N and I-many, devote months to preparing a

27   proof of concept detailing the proposed implementation of an individualized and customized

28   software and services solution for that particular customer's organizational needs.  Because the

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**DEFENDANT MODEL N'S MOTION TO DISMISS**              3              **CASE NO. C 07-05149 CW**

1  proposed solution is extremely expensive and intended to reorganize and change the internal

2  management systems and transactions processing at these companies, a purchase can only be

3  completed after lengthy evaluation, negotiation and discussion between the customers and the

4  various respective competing vendors to ensure that the customer's needs are met by the vendor

5  the customer will ultimately choose.  Although Model N has a website where customers can find

6  information about the company, its customers and the products and services it offers, it is an

7  inconsequential part of the actual sales process.  Customers do not, and cannot, make purchases

8  of Model N's products or services on the Model N website.  Similarly, customers do not, and

9  cannot, make purchases of I-many's products or services on the I-many website.

10  **Sponsored Links Through The Google AdWords Program[2]**

11       Google allows internet users to locate websites that match "keywords" (*i.e.*, search terms)

12  they enter.  It then uses algorithms to process the keywords inputted by the user, producing a

13  search results web page that displays links to websites in its database that match the keywords.

14  Links to the websites are normally displayed in order of decreasing relevance, with the most

15  relevant websites listed first.  Google's search engine processes billions of searches annually and

16  covers billions of web pages.

17       Google also offers a keyword-triggered advertising program which enables advertisers to

18  purchase or bid on certain keywords or phrases ("AdWords Program").  When an internet user

19  then enters those specific keywords or phrases into the search engine, the program generates

20  search results with links to websites, as well as separate "Sponsored Links" or "Sponsored

21  Results" to various AdWords Program participants' respective websites ("Sponsored Links").

22  *See* Complaint at Exs. F-M.  These Sponsored Links appear at the margins of the search results

23  pages (usually the top or the right margin), concurrently with the relevant websites returned as a

24  result of the user's keyword search.  *See id.*  The AdWords Program does not affect the actual

25  search results delivered by the Google search engine.

26  _____

27  [2]      All of the other search engines alleged in the Complaint by I-many, *i.e.*, including alexa.com, ask.com, info.com, lycos, com, mamma.com, netscape.com, and search.aol.com, rely on Google's network to display their search results and Sponsored Links.

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**DEFENDANT MODEL N'S MOTION TO DISMISS**                    4                    **CASE NO. C 07-05149 CW**

1    A Sponsored Link has several components.  It consists of text (some of which is

2    hyperlinked text and other text which is not hyperlinked) in addition to the specific underlined

3    URL[3] to which the user will be directed after clicking on the hyperlinked text.  *See id*.  When an

4    advertiser signs up with Google's AdWords Program, Google may implement a dynamic

5    keyword insertion technique ("DKI"), whereby the selected keywords are then automatically

6    inserted by Google Tools into the Sponsored Link as the hyperlinked text.  For example, if a user

7    searched for "Revenue Management," and this is a "keyword" purchased and used by an

8    AdWords user, then the hyperlinked text of the resulting Sponsored Link would be dynamically

9    generated to match the user's input and read "Revenue Management."  Trademark owners may

10   register their marks with Google through a simple process on Google's website so that their

11   marks do not appear in the text of any Sponsored Links.  However, Google allows the purchase of

12   trademarks as keywords even if they are marks registered with Google.

13   Model N and I-many both participate in Google's AdWords Program and have purchased

14   keywords with Google that include each others' respective marks.  However, Model N, unlike I-

15   many, had registered its marks with Google so that Google would block the use of its marks from

16   appearing in the text of any Sponsored Links that resulted from a keyword search of its marks.

17   Model N's AdWords campaign with Google employed the DKI technique—however upon

18   learning that the I-many text had inadvertently appeared in the Sponsored Link as a result of the

19   DKI technique—Model N immediately ceased the DKI technique.  Thus, although the I-many

20   marks are still among the keywords Model N has purchased, the I-many text no longer appears in

21   any of its Sponsored Links.

22   The I-many Complaint

23   The I-many complaint, filed on October 5, 2007, alleges claims of: (1) trademark and

24   service mark infringement under 15 U.S.C. § 1114; (2) federal trademark and service mark

25   infringement under 15 U.S.C. § 1125(a); (3) common law infringement; (4) common law unfair

26   competition; (5) unfair competition under Cal. Bus. & Prof. Code section 17200 *et seq*.; (6)

27

28   [3]    A URL (Uniform Resource Locator) is an address that identifies a particular file on the Internet, usually consisting of the protocol, as http, followed by the domain name.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**DEFENDANT MODEL N'S MOTION TO DISMISS**          5          **CASE NO. C 07-05149 CW**

1  federal trademark dilution under 15 U.S.C. § 1125(c); and (7) dilution under Cal. Bus. & Prof.

2  Code § 14330.  The entirety of plaintiff's complaint stems solely from the following alleged

3  conduct:  that "On information and belief, Model N has purchased certain advertisements from

4  [internet search engine] that incorporate the I-many Marks, with full knowledge of I-many's

5  superior rights to the use of the I-many Marks."  Complaint at ¶¶ 22-28.  The same artfully

6  worded phrasing is used throughout the Complaint regarding Model N's alleged "purchases" of

7  "advertisements that incorporate the I-many Marks."  *See, e.g.*, Complaint at ¶ 30.

8        No allegations discuss Google's AdWords Program or how Model N's Sponsored Links

9  are generated.  *See generally* Complaint.  No allegations or claims are made based on Model N's

10  purchase of the I-many marks from Google as keywords.[4]  *See id.*  Additionally, no allegations

11  are made that Model N itself incorporated any I-many marks into any of its Sponsored Links.  *See*

12  *id.*  This is so because Model N only purchased **keywords** from Google, and did not itself insert

13  the I-many mark in the alleged "advertisements," *i.e.*, the text of its Sponsored Links.  Instead, the

14  "I-many" text appeared as a result of Google's DKI technique.  Model N has not gained any

15  customers through its use of Google's AdWords program.

16        Plaintiff further alleges that when the user clicks on "I-many" the "user is taken directly to

17  Model N's web page advertising Model N's products."  *See, e.g.*, Complaint at ¶¶ 21-28.  Model

18  N's web page (its official site, "www.modeln.com") is underlined and expressly identified

19  immediately underneath "I-many" within the particular Sponsored Link.  *See, e.g.*, Complaint at

20  ¶¶ 21-28, Exs. F-M.  Model N's Sponsored Link also simultaneously appears in the margins of

21  the search engine's **actual** relevant search results—the first and foremost of which is the I-many

22  mark, complete with descriptive information about the company and accompanied by a hyperlink

23  to I-many's official corporate website, "www.imany.com."  *See* Complaint at Exs. F-M.

24  Additional links within the search results are to I-many's website, as well as to other websites

25  with information about I-many.  *See* Complaint at Exs. F-M.  The I-many website itself makes no

---

[4]  Based on its reading of the complaint, plaintiff makes this assumption for purposes of this motion. However, it is not entirely clear whether this theory of trademark infringement underlies plaintiff's complaint. Accordingly, Model N has also requested herein a more definite statement pursuant to Rule 12(e) on this issue in Part IV, *infra*.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

association, sponsorship or mention of Model N.  Similarly, the Model N website itself makes

absolutely no association, sponsorship or mention of I-many.  Indeed, nowhere in the Complaint

does Plaintiff allege that Model N uses the I-many mark on Model N's website, or on any of

Model N's goods or services.  *See generally* Complaint.

## ARGUMENT

### I.    LEGAL STANDARD.

A complaint may be dismissed for failure to state a claim upon which relief can be granted

due to: "(1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal

claim."  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do.  Factual allegations must be enough to raise a right to relief above the speculative

level."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted).  The

Court need not accept "any unreasonable inferences or assume the truth of legal conclusions cast

in the form of factual allegations."  *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).

When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence

outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for

summary judgment, and it must give the nonmoving party an opportunity to respond.  *See* Fed. R.

Civ. P. 12(b); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 n.4 (9th Cir. 1998).  A court may,

however, consider certain materials—documents attached to the complaint, *Durning v. First

Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987), documents incorporated by reference in the

complaint, *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002), or matters of judicial notice,

Fed. R. Evid. 201—without converting the motion to dismiss into a motion for summary

judgment.  *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).

### II.    I-MANY'S SIXTH AND SEVENTH CLAIMS FOR DILUTION MUST BE DISMISSED PURSUANT TO RULE 12(B)(6) BECAUSE I-MANY FAILS TO PLEAD A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

The Federal Trademark Dilution Act ("FTDA"), passed in 1995, and amended in October

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   2006,[5] governs federal dilution claims.  *See* 15 U.S.C. § 1125(c).  The FTDA defines dilution as

2   follows:

3         Subject to the principles of equity, the owner of a famous mark that is
          distinctive, inherently or through acquired distinctiveness, shall be entitled
4         to an injunction against another person who, at any time after the owner's
          mark has become famous, commences use of a mark or trade name in
5         commerce that is likely to cause dilution by blurring or dilution by
          tarnishment of the famous mark, regardless of the presence or absence of
6         actual or likely confusion, of competition, or of actual economic injury.

7   *Id.*  The Ninth Circuit further requires plaintiff establish the following elements:  that (1) the

8   trademark is famous; (2) the defendant is making a commercial use of the mark in commerce; (3)

9   the defendant's use began after the mark became famous; and (4) the defendant's use of the mark

10  dilutes the quality of the mark by diminishing the capacity of the mark to identify and to

11  distinguish goods and services.  *See, e.g., Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1324

12  (9th Cir. 1998).  As seen below, plaintiff's dilution claims must be dismissed because it has not

13  pled sufficient facts under any cognizable theory of dilution.

14          **A.    The Dilution Claims Must Fail Because the I-many Marks Are Not Famous.**

15          Plaintiff's dilution claims must first fail because it cannot establish the threshold

16  requirement that its marks are famous.  With the passage of the amendments to the Federal

17  Trademark Dilution Act in October 2006, Congress explicitly required that for a mark to be

18  considered "famous," it must be "widely recognized *by the general consuming public of the*

19  *United States* as a designation of source of the goods or services of the mark's owner."  15 U.S.C.

20  ───────────────────
    [5]        The 2006 amendments to the FTDA have been summarized as follows:

21          Specific changes to federal dilution law under the TDRA include the
            establishment of a "likelihood of dilution" standard for dilution claims,
22          rather than an "actual dilution" standard; a provision that non-inherently
            distinctive marks may qualify for protection; *a reconfiguration of the*
23          *factors used to determine whether a mark is famous for dilution*
            *purposes, including a rejection of dilution claims based on "niche"*
24          *fame*; the specification of separate and explicit causes of action for
            dilution by blurring and dilution by tarnishment; and an expanded set of
25          exclusions.

26  *Dan-Foam A/S & Tempur-Pedic, Inc. v. Brand Named Beds, LLC*, 500 F. Supp. 2d 296, 307
    (S.D.N.Y. 2007) (emphasis added).  Indeed, it appears that I-many was unaware of the 2006
27  amendments to the FTDA as they allege "actual dilution" rather than a likelihood of dilution.
    Complaint at ¶ 63.

28

**DEFENDANT MODEL N'S MOTION TO**          8          **CASE NO. C 07-05149 CW**
**DISMISS**

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

§ 1125(c)(2)(A) (emphasis added). This amendment effectively eliminated dilution claims where a mark could be considered "famous" when only recognized within one's niche market. *See, e.g.*, *Jarritos, Inc. v. Los Jarritos*, No. C 05-02380, 2007 U.S. Dist. LEXIS 32245, at *53 (N.D. Cal. May 2, 2007) (FTDA amended to deny protection to marks only famous in niche markets); *Century 21 Real Estate LLC v. Century Ins. Group*, No. CIV 03-0053, 2007 U.S. Dist. LEXIS 9720, at *42-43 (D. Ariz. Feb. 9, 2007) (same); *Verilux, Inc. v. Hahn*, No. 3:05cv254, 2007 U.S. Dist. LEXIS 58507, at *37 (D. Conn. Aug. 10, 2007) (granting summary judgment in favor of defendant, noting "[e]ven assuming Plaintiff is well-known in the lighting products market, such 'niche market' reputation is insufficient under both the TDRA and FTDA to be considered famous."). Even prior to the passage of the amended FTDA, the Ninth Circuit required a mark to be "truly prominent and renowned" to meet the "famousness" element of protection under the dilution statute. *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999) (noting that dilution is a cause of action "invented and reserved for a select class of marks—those marks with such powerful consumer associations that even non-competing uses can impinge on their value") (citation omitted).

Plaintiff's dilution claims[6] must be dismissed because the Complaint fails to allege facts demonstrating its marks are recognized by the general consuming public in the United States. Instead, I-many alleges that its marks "have become well known … ***in the trade and among customers of contract and transaction compliance management systems***." Complaint at ¶ 16. (emphasis added). I-many further alleges it "invested considerable resources in establishing the I-many Marks ***in the minds of customers*** as a leader in providing contract and transaction management systems." *Id.* at ¶ 17 (emphasis added). Thus, I-many has only alleged fame within its niche market. The only other allegations related to the purported famousness of its marks are mere vague and conclusory statements. *See* Complaint at ¶ 61 (Count Six for Federal Trademark Dilution) and ¶ 67 (Count Seven for Dilution Under California Law) ("The I-many Marks are

---

6   I-many alleges a federal dilution claim pursuant to 15 U.S.C. § 1125(c) and a state dilution claim pursuant to Cal. Bus. & Prof. Code § 14330. Complaint at ¶¶ 60-70. The California state law dilution claim "is subject to the same analysis as [a] federal claim." *Panavision Int'l*, 141 F.3d at 1324.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    famous and inherently distinctive.")  Such factual and conclusory allegations are insufficient to

2    fulfill the statutory requirements of establishing their marks have the requisite fame; accordingly,

3    Plaintiff's dilution claims should be dismissed.  *See, e.g.*, *Hamzik v. Zale Corp./Del.*, No. 3:06-cv-

4    1300, 2007 U.S. Dist. LEXIS 28981, at *15, 17 (N.D.N.Y. Apr. 19, 2007) (dismissing dilution

5    claim where plaintiff alleged no facts suggesting mark was famous).

### B.    I-many Fails to Allege Any Facts Supporting a Claim that Model N Has Caused Any "Dilution" of I-many's Marks.

6
7
8        Plaintiff's dilution claims also fail because there are no facts alleged supporting a

cognizable theory of dilution.  As stated above, the amended federal antidilution statute expressly

9    recognizes two forms of dilution:  blurring and tarnishment.  Although 15 U.S.C § 1125 allows

10   for cyberpiracy prevention with respect to domain names, *see* 15 U.S.C. § 1125(d) (the

11   Anticybersquatting Consumer Protection Act), domain names are not at issue in this lawsuit.  *See*

12   *generally* Complaint.  Dilution by blurring is "association arising from the similarity between a

13   mark or trade name and a famous mark that impairs the distinctiveness of the famous mark" (*e.g.*,

14   Dupont shoes, Buick aspirin, Kodak pianos), whereas dilution by tarnishment is "association

15   arising from the similarity between a mark or trade name and a famous mark that harms the

16   reputation of the famous mark" (*e.g.*, I-many gambling advice website[7]).  15 U.S.C.

17   §§ 1125(c)(2)(B)(1), 1125(c)(2)(C)(1).  Neither blurring nor tarnishment is alleged anywhere in

18   the Complaint. *See generally* Complaint.

19       In fact, only minimal ambiguous references are made to dilution in the Complaint.[8]  *See*

20   Complaint at ¶ 68 ("Model N's unauthorized use of the I-many Marks has diluted, and is likely to

21   dilute, the distinctive quality of the I-many Marks in violation of California Business &

22   Professions Code § 14330"); Complaint at ¶ 69 ("Model N willfully intended to trade on I-

23
24   [7]    A link to www.imanyinc.com, a website providing blackjack gambling advice, appears as a search
result when entering the keyword "I-Many" in the Lycos search engine.  *See* Complaint at Ex. J
(search result seven).

25
26   [8]    To the best of what Model N can discern, I-many is alleging that the use of the I-many mark in a
Sponsored Link to hyperlink to Model N's website gives rise to some form of dilution by blurring.
However, as argued herein, this fact alone cannot give rise to an actionable dilution claim.  To the
extent that plaintiff is alleging some other theory of dilution, Model N is unable to determine this
from the pleading and thus requests that it provide a more definite statement with respect to its
dilution claims pursuant to Rule 12(e).

27
28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    many's goodwill and reputation to dilute the I-many marks"); Complaint, prayer for relief at

2    ¶¶ 1, 2 (alluding to injury to "I-many's reputation").  Such allegations are mere formulaic

3    recitation of dilution elements and do not demonstrate any entitlement to relief under the dilution

4    statutes. *See Bell Atl. Corp.*, 127 S. Ct. at 1964-65 (2007).

5            More confusingly, by generally incorporating by reference all prior allegations in its

6    dilution counts, plaintiff conflates its allegations concerning likelihood of confusion used in a

7    trademark infringement analysis with its allegations concerning trademark dilution, which does

8    not consider likelihood of confusion.  *See, e.g.*, Complaint at ¶¶ 31-35 (allegations only involving

9    likelihood of confusion by user).  Trademark scholar, J. Thomas McCarthy clarifies the

10    distinction between the two concepts as follows:

> In order for…dilution to occur, prospective purchasers must make a
> mental connection between the plaintiff's mark and the designation used
> by the defendant.  The connection, however, is not that which serves as
> the basis of liability for trademark infringement—the mistaken belief that
> the plaintiff is in some way associated with defendant's goods—***but
> rather is the accurate recognition that a mark associated with the
> plaintiff is now also in use as an identifying symbol by another***.

15    4 McCarthy on Trademarks and Unfair Competition at § 24:72 (4th ed. 2007), citing Restatement

16    (Third) of Unfair Competition § 25, comment f (1995) (emphasis added).  The theory is that

17    dilution creates harm not by causing confusion as to source of a good or service, but creating an

18    association in consumers' minds between a mark and a different good or service.  *See SG Servs.*

19    *v. God's Girls Inc*, No. CV 06-989, 2007 U.S. Dist. LEXIS 61970, at *23 (C.D. Cal. May 11,

20    2007), citing McCarthy at § 24:70 and *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 805 (9th

21    Cir. 2002).

22            Here, Plaintiff alleges no facts that indicate that Model N is using I-many's mark to

23    identify Model N's own goods and services or how the Sponsored Link would create an

24    association in user's minds that Model N's products and services are offered by "I-many."

25    Plaintiff cannot make any such allegations, as the I-many text within the Sponsored Link is only a

26    ***link*** that directs a user to the listed website.  Indeed, the Complaint even alleges that "the user is

27    taken directly to Model N's web page ***advertising Model N's products***." Complaint at ¶¶ 21-28

28    (emphasis added).  Thus, the user is taken to a website where there are ***no*** I-Many marks or any

**DEFENDANT MODEL N'S MOTION TO DISMISS**                    11                    **CASE NO. C 07-05149 CW**

1    other information that would suggest that Model N's goods or services are offered by an "I-

2    many." At the Model N website, only products and services explicitly using the Model N marks

3    are promoted. Plaintiff's dilution claims must fail because the mere presence of this hyperlink

4    does not create an association between the I-many mark and Model N's goods and services and

5    does not adversely affect the purported distinctiveness of the I-many marks. Additionally, both

6    the actual search results and the Sponsored Links are comprised of multiple listings which reflect

7    the mark "I-many" and that also link to other non-I-many websites.[9] Allowing Plaintiff's claim to

8    proceed on the facts against Model N as alleged would create an over-expansive and absurd result

9    whereby I-many could assert a cognizable dilution claim against *any* website simply because it

10   displayed "I-many" as text in either Google's search results or Sponsored Links, but directed the

11   user to a non-I-many website. Accordingly, for the foregoing reasons, plaintiff's dilution claims

12   must be dismissed.

13       **C.**    **Plaintiff's Dilution Claims Should Be Dismissed Because Model N and I-many**

14                   **Are Direct Competitors.**

15          Finally, in this case, recovery on a theory of trademark dilution should also be dismissed

16   because plaintiff and defendant are direct competitors offering similar goods. *See YKK Corp. v.*

17   *Jungwoo Zipper Co*., 213 F. Supp. 2d 1195, 1207 (C.D. Cal. 2002); *see also* Complaint at ¶ 20

18   ("On information and belief, since 1999, Model N has been in direct competition with I-many,

19   providing software and related services to manage contract and transaction compliance for life

20   sciences companies, among other products."). The district court in *YKK Corp*. found the

21   following reasoning of McCarthy "relevant and persuasive" when holding dilution inappropriate

22   in such cases:

23

24

25

26   [9]     Such examples are reflected in the exhibits to the complaint. *See, e.g.*, Complaint at Ex. J

27   (lycos.com search engine reflecting "I-many" text with link to www.imanyinc.com, a non-I-many
     website among search results); Complaint at Ex. K (mamma.com search engine reflecting "I-
     many" mark linked to www.business.com).

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

> It is difficult to understand why an anti-dilution law is invoked when the parties operate in competitive or closely related product or service lines. The legal theory of anti-dilution was conceived to protect strong marks against a diluting use by a junior user in a product or service line *far removed from that in which the famous mark appears*. Thus, using the anti-dilution law when the parties are competitors in the same market sounds a dissonant and false note. Why the need to invoke the 'super weapon' of the anti-dilution law to resolve what appears to be a garden variety infringement case?…

> The anti-dilution laws should only be rarely and sparingly applied to cases involving parties selling in the same market. The anti-dilution theory was not designed or conceived to apply to such cases and it makes a poor fit. It is the wrong tool for the job. Its mis-use in competitive situations is bound to upset the balance of free and fair competition and deform the anti-dilution doctrine.

*Id.* at 1207-08, citing McCarthy at § 24:72 (emphasis added); *see also TCPIP Holding Co. v. Haar Commc'ns, Inc.*, 244 F.3d 88, 95 (2nd Cir. 2001) ("[the FTDA's] purpose is to protect the owners of famous marks from the kind of dilution that is permitted by the trademark laws when a junior user uses the same mark in a non-confusing way *in an unrelated area of commerce*.") (emphasis added).  In this case, it is alleged and furthermore indisputable that both Model N and I-many are competitors in the same area of commerce, offering similar products.  Dilution is thus inapplicable and Counts Six and Seven should be dismissed without leave to amend on this basis.

> **D.    The Federal Dilution Claim Should Be Dismissed Because Plaintiff Fails to Plead Facts Demonstrating Plaintiff Is Entitled to Damages Under 15 U.S.C. § 1125(c)(5).**

Additionally, to the extent plaintiff is only seeking damages pursuant to its federal dilution claim,[10] its claim must be dismissed because plaintiff fails to plead the requisite elements required

---

[10] I-many's Complaint is not clear as to what relief is sought pursuant to which dilution claims.  In Count Six for federal dilution, plaintiff appears to only seek damages, *see* Complaint at ¶ 65, whereas in Count Seven, plaintiff appears to only seek injunctive relief, *see* Complaint at ¶ 70. Though plaintiff's prayer for relief seeks both preliminary and permanent injunctive relief, it is unclear pursuant to which claims, but appears to be based only upon infringement, false designation of origin and unfair competition.  *See* Complaint, prayer for relief at ¶¶ 1, 2.  For purposes of this motion, Model N accepts the pleading on its face whereby plaintiff purports to seek damages, and not injunctive relief, pursuant to its federal dilution claim.

**DEFENDANT MODEL N'S MOTION TO DISMISS**          13          **CASE NO. C 07-05149 CW**

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  to recover damages[11] for dilution under 15 U.S.C. § 1125(c)(5).  First, plaintiff makes no

2  allegations as to when the the I-many marks was first used in commerce by Model N, so it is

3  unclear whether damages under the amended FTDA are even applicable here.  *See generally*

4  Complaint; 15 U.S.C. § 1125(c)(5)(A).  However, more importantly, plaintiff makes no

5  allegations supporting a claim that Model N "willfully intended to trade on the recognition of" the

6  I-many marks or "willfully intended to harm the reputation" of the I-many marks.  The singular

7  allegation that Model N purchased "certain advertisements incorporating the I-many Mark, with

8  full knowledge of I-many's superior rights to the use of the I-many Marks," Complaint at ¶¶ 21-

9  28, is wholly inadequate and vague.  This allegation falls short of establishing that Model N acted

10 with any intent to harm I-many.  At best, it only establishes that Model N only purchased an

11 advertisement that incorporated the I-many mark, ***not*** that Model N knew it purchased the

12 advertisement with the I-many mark, nor that Model N itself incorporated the I-many mark into

13 the advertisement.  Further, in what looks like an ill-executed cut and paste job, Plaintiff also only

14 conclusorily alleges that "Defendants [sic] acted and are acting with a willful intention to trade on

15 I-many's reputation."  Complaint at ¶ 64. Such an allegation fails even to properly recite the

16 elements needed for the remedy plaintiff seeks and conflates the requirements of 15 U.S.C.

17 § 1125(c)(5)(B)(i) with 15 U.S.C. § 1125(c)(5)(B)(ii).  Because plaintiff has not established its

18 entitlement to damages under 15 U.S.C. § 1125(c)(5), and this is the sole relief requested pursuant

19 to this claim, Count Six for federal dilution should be dismissed.

20 **III.    PLAINTIFF'S FIFTH CAUSE OF ACTION FOR UNFAIR COMPETITION**

21 **UNDER CAL. BUS. AND PROF. CODE SECTION 17200 *ET SEQ.*, MUST BE**
   **DISMISSED.**

22 Plaintiff has further alleged a claim of unfair competition against Model N under

23

---

24 [11]    A mark holder is generally only entitled to injunctive relief pursuant to the FTDA.  *See* 15 U.S.C.
§ 1125(c)(1). However, in extraordinary cases the FTDA may allow a Plaintiff to recover

25 additional remedies subject to the court's discretion and principles of equity if: "(A) the mark or
trade name that is likely to cause dilution by blurring or dilution by tarnishment was first used in

26 commerce by the person against whom the injunction is sought after the date of enactment of the
Trademark Dilution Revision Act of 2006 [enacted Oct. 6, 2006]; and (B) in a claim arising under

27 this subsection—(i) by reason of dilution by blurring, the person against whom the injunction is
sought willfully intended to trade on the recognition of the famous mark; or (ii) by reason of

28 dilution by tarnishment, the person against whom the injunction is sought willfully intended to
harm the reputation of the famous mark." 15 U.S.C. § 1125(c)(5).

California Business and Professions Code sections 17200 *et seq*. ("section 17200"). Specifically, plaintiff alleges that Model N's acts described in the Complaint "constitute unfair and fraudulent business practices in violation of California Business and Professions Code §§ 17200 *et seq*." Complaint at ¶ 58.[12] Such conclusory and vague allegations are wholly inadequate to state a claim under section 17200 and this claim should be dismissed on this ground alone. *See Mintel Learning Tech., Inc. v. Beijing Kaidi Educ. & Tech. Dev. Co.*, No. C 06-7541, 2007 U.S. Dist. LEXIS 59946, at *29-30 (N.D. Cal. Aug. 9, 2007) ("[Plaintiff] simply alleges that '[t]he foregoing illegal, unfair, and/or fraudulent conduct . . . constitutes unfair competition.' Even by liberal federal pleading standards, such an allegation is completely inadequate.").

Regardless, in order to state a claim for unfair competition under section 17200, a plaintiff must "establish that the defendant's business practice is 'either unlawful (i.e., is forbidden by law), unfair (i.e., harm to victim outweighs any benefit) or fraudulent (i.e., is likely to deceive members of the public).'" *FreecycleSunnyvale v. Freecycle Network, Inc.*, No. C 06-00324, 2006 U.S. Dist. LEXIS 54374, at *22-23 (N.D. Cal. July 25, 2006), citing *Albillo v. Intermodal Container Servs., Inc.*, 114 Cal. App. 4th 190, 206 (2003). Here, plaintiff has brought its 17200 claim under only two prongs: that defendant's acts are "unfair" and "fraudulent." *See* Complaint at ¶ 58. Accordingly, defendant addresses these two prongs in turn.

First, plaintiff has failed to state a claim under section 17200 under the "unfair" prong because it has not alleged any conduct that violates any antitrust law. As the California Supreme Court explained, "When a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law . . . ." *Cel-Tech Commc'ns v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). No allegations in the complaint remotely suggest that I-many's competitor Model N is engaged in any such conduct. *See generally* Complaint. Thus, to

---

[12] Although Count Five makes reference to "unfair, deceptive, untrue, and misleading advertising in violation of section 17200, as they are likely to deceive and confuse the public," *see* Complaint at ¶ 58, it is not entirely clear if these recitals were intended to relate to a separate claim under Cal. Bus. & Prof. Code §§ 17500 *et seq.*, or to be subsumed by the alleged section 17200 claim. To the extent that it is the former, Model N respectfully requests the Court require plaintiff to plead a more definite statement pursuant to Rule 12(e) to clarify I-many's Count Five against Model N.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  the extent that plaintiff brings its section 17200 claim against Model N on this basis, this claim

2  should be dismissed.

3          Second, plaintiff has also failed to state a claim under the "fraudulent" prong of section

4  17200 because section 17200 claims grounded in fraud must satisfy the particularity requirements

5  of Rule 9(b) of the Federal Rules of Civil Procedure.  *See Vess v. Ciba-Geigy Corp., USA*, 317

6  F.3d 1097, 1103 (9th Cir. 2003) (applying Rule 9(b)'s pleading requirements for claims based in

7  fraud to a Section 17200 claim); *Parrish v. NFL Players Ass'n*, No. C 07-00943, 2007 U.S. Dist.

8  LEXIS 68355, at *24-27 (N.D. Cal. Sep. 6, 2007).  Rule 9(b) provides that "[i]n all averments of

9  fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with

10  particularity."  Thus, to the extent that I-many alleges that Model N engaged in fraudulent

11  conduct, I-many must allege specific facts supporting the elements of a fraud claim—

12  misrepresentation, knowledge of falsity, intent to induce reliance, justifiable reliance, and

13  resulting damage.  *See Lazar* v. *Superior Court*, 12 Cal. 4th 631, 638 (1996).  Plaintiff must

14  allege the precise time, place, and nature of the misleading statements, misrepresentations, or

15  specific acts of fraud.  *See Mintel Learning Tech.*, 2007 U.S. Dist. LEXIS 59946, at *30-31.  "In

16  addition, the requirement of specificity in a fraud action against a *corporation* requires the

17  plaintiff to allege the names of the persons who made the allegedly fraudulent representations,

18  their authority to speak, to whom they spoke, what they said or wrote, and when it was said or

19  written." *Comerica Bank v. McDonald*, No. C-06-03735, 2006 U.S. Dist. LEXIS 86306, at *10

20  (N.D. Cal. Nov. 20, 2006).  Plaintiff has made no such allegations here.  *See generally* Complaint.

21  Thus, to the extent that plaintiff brings its section 17200 claim against Model N on this basis, it

22  should be dismissed.

23  **IV.    BECAUSE MODEL N CANNOT REASONABLY RESPOND TO THE
       COMPLAINT, I-MANY SHOULD BE REQUIRED TO PLEAD A MORE
24     DEFINITE STATEMENT PURSUANT TO RULE 12(E).**

25          Rule 12(e) of the Federal Rules of Civil Procedure provides, in pertinent part:  "If a

26  pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot

27  reasonably be required to frame a responsive pleading, the party may move for a more definite

28  statement before interposing a responsive pleading."  In this case, Model N moves for a more

definite statement pursuant to Rule 12(e) with respect to I-many's trademark infringement claims because it is unclear from the Complaint whether or not I-many asserts a theory of trademark infringement against Model N on the basis of Model N's purchase of the I-many marks as keywords from Google by way of its AdWords Program.[13]  Clarification as to plaintiff's theories of liability is necessary in order for Model N to prepare its responsive pleading, including its affirmative defenses.  For example, if I-many is indeed asserting that Model N's purchase of the I-many marks as keywords alone constitutes trademark infringement, Model N would among other things seek to assert an affirmative defense of unclean hands, based on the fact that I-many engages in the identical conduct in its purchase of Model N's marks as keywords from Google. Without clarification from I-many, or an affirmative statement that I-many is not claiming trademark infringement under this theory, Model N would be unable to prepare an appropriate response to I-many's Complaint.

## CONCLUSION

For the foregoing reasons, Model N respectfully requests that the Court grant its motion to dismiss Counts Five through Seven pursuant to Rule 12(b)(6) and grant its motion for a more definite statement pursuant to Rule 12(e).

Dated: October 29, 2007                    FENWICK & WEST LLP


                                           By:    s/ Rodger R. Cole
                                                   Rodger R. Cole

                                           Attorneys for Defendant
                                           MODEL N, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

---

[13]    This area of law of whether such purchase of keywords constitutes "use in commerce" has been recently litigated throughout the federal courts, particularly by Google.  Without a clearer understanding of the allegations I-many has made against Model N, Model N cannot properly prepare a responsive pleading and affirmative defenses to this theory of liabilty, nor is it able to bring a motion to dismiss to test the sufficiency of such allegations.